**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ARLINDA ROBINSON,** *et al.* | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No:  8:19-cv-01025-DLB** |
| | ) | |
| | ) | |
| **DAVID PYTLEWSKI,** *et al*. | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs, Arlinda Robinson, individually and as Personal Representative for the Estate of James C. Robinson, and Diana Calderon, as Mother and Next Friend of Amiyah Isla Robinson and Ammanuel Chabon Robinson (collectively hereinafter the "Plaintiffs"), through their undersigned counsel, hereby file this Memorandum in Support of their Motion to Compel Answers to Interrogatories and Responses to Defendant MHM Services, Inc., (hereinafter "MHM") and Request for Hearing (the "Motion to Compel") pursuant to Federal Rules 26, 33, 34, and 37.

### I.      INTRODUCTION

James C. Robinson was a thirty-three (33) year old prisoner in the Maryland Division of Corrections ("DOC") at the time of his untimely death at the Eastern Correctional Institution ("ECI") in March 2016.  Mr. Robinson, like so many prisoners, suffered from serious and largely untreated mental illness including schizoaffective disorder, bipolar disorder, and major depressive disorder.  Coupled with his lengthy mental health history were multiple suicide attempts dating back at least twenty years prior to his incarceration at ECI.  In early-2016, several life events exacerbated Mr. Robinson's ongoing mental health issues.  At all relevant times, each Defendant

knew about Mr. Robinson's well-documented history of serious mental illness and suicide attempts.

Mr. Robinson arrived at ECI in February 2016 and was immediately placed on suicide watch.  In the months prior to his transfer to ECI, Mr. Robinson repeatedly expressed suicidal ideation and attempted suicide by tying a bedsheet around his neck. Mr. Robinson's mental health decline was attributed to medication mismanagement and multiple failures in the continuity of his medical care.  During his incarceration in ECI, Mr. Robinson's condition degraded mostly due to medication mismanagement.  He would often express suicidal ideation and made clear to correctional and medical staff that he intended to commit suicide by hanging himself with a bedsheet.  However, instead of treating his serious mental illness, the Defendants punished Mr. Robinson for what they perceived to be a behavioral issue.  As a result, Mr. Robinson spent a significant amount of his time at ECI in solitary confinement with little or no contact with other prisoners or medical staff.  Had the Defendants bothered to look at Mr. Robinson's medical chart, they would have seen that he had not received the proper dose of his psychotropic medication for nearly two months.

On March 7, 2016, Mr. Robinson told ECI staff that he was going to commit suicide by hanging himself with a bedsheet.  Drs. Pytlewski and Pinn placed Mr. Robinson on suicide watch. After three days on suicide watch, Drs. Pytlewski and Pinn released Mr. Robinson provided that he was medication compliant and that he was housed in a double cell (i.e. with another prisoner). However, upon his release from suicide watch, Mr. Robinson was placed in a solitary confinement cell without another prisoner and refused his medication.  Mr. Robinson was found dead in his cell with a bedsheet tied around his neck on March 14, 2016.  The cause of death was suicide by hanging.

At first blush, this seemed like a tragic and avoidable medical malpractice case.  However, initial discovery revealed that Mr. Robinson's suicide death was the most recent in a long string of avoidable and preventable suicides in Maryland prisons dating back to the early 2000s.  These suicides shared numerous commonalities, including serious mental illness, high risk of suicide, medication mismanagement, failures in the continuity of medical care, treating manifestations of mental illness as behavioral issues and punishing them, the inappropriate use of solitary confinement (where the vast majority of these suicides occurred), failures to limit the means to complete suicide, and staggering oversight failures within the State and its exclusive medical contractors.  Equally telling was the State's steadfast refusal to produce information and documents regarding the aforementioned suicide trends.

Even without the State's complete discovery responses, it has become painfully clear that Drs. Pytlewski and Pinn's individual failures in this case were only one of the causes of Mr. Robinson's death.  Simply put, the State and its medical contractor have engaged in a pattern and practice of deliberate indifference to prisoners with serious mental illness, which has caused dozens of unnecessary and preventable deaths by suicide.  However, Plaintiffs need the complete information and documentation that underlie this pattern and practice in order to prove their claims against the Defendants in this case.  That information is in the exclusive possession of the State, and the State has refused to produce it because, in the State's view, it is not relevant to this action.

## II.    FACTUAL AND PROCEDURAL HISTORY

On September 22, 2020, Plaintiff Arlinda Robinson served MHM with Interrogatories and Requests for Production of Documents.  MHM provided its Answers on January 4, 2021, and its Responses and document production on February 23, 2021.

On February 24, 2021, at Plaintiffs' request, counsel for the Plaintiffs, MHM, and the State met and conferred to discuss MHM and the State's deficient discovery responses and document productions. During this conference, MHM and the State advised that they would each submit more complete Responses, supplement their document production, and include privilege logs where necessary.

On March 2, 2021, having received no supplemental Responses or document production from either party, the Plaintiffs sent deficiency letters to the State and MHM (attached as **EXHIBIT 1**) reiterating the deficiencies discussed at the February 24th conference. On March 9, 2021, MHM supplemented its document production, but did not include supplemental written Responses or a formal response to Plaintiffs' deficiency letter. MHM's supplemental document production did not cure the outstanding discovery issues as outlined in Plaintiffs' deficiency letter of March 2, 2021. MHM has not supplemented its Answers to Interrogatories as of the date of this letter.

### III.   APPLICABLE LAW/STANDARD OF REVIEW

The scope of discovery is governed by Federal Rule of Civil Procedure 26. Rule 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The term "relevance" is construed broadly to encompass information *need not be admissible* to be relevant and discoverable. Courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules, which "emphasize that relevance is, and has always been, the cornerstone of the scope of discovery." *See e.g. Callahan et al. v. Toys "R" Us-Delaware, Inc. et al.*, No. 15-2815-JKB, 2016 WL 8671848 at *4 (D. Md. May 6, 2016) (citing Rule 26 and the Advisory Committee Notes).

The onus is on the party resisting discovery to demonstrate specifically how the objected-to request is unreasonable or otherwise unduly burdensome. *See e.g.* Fed. R. Civ. P. 33(b)(4). The

4

State, therefore, as the party resisting discovery, bears the burden of demonstrating precisely why its objections are proper given the broad and liberal construction of the federal discovery rules. *See United Oil Co. v. Parts Assocs.,* 227 F.R.D. 404, 411 (D. Md. 2005). This includes all objections asserted, including those based on relevance, proportionality or burden, which must be particularized. *Mancia v. Mayflower Textile Servs. Co*., 253 F.R.D. 354 (D. Md. 2008); *see also Hall v. Sullivan*, 231 F.R.D. 468 (D. Md. 2005) and *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp*., 173 F.R.D. 651 (D. Md. 1997).  Absent such particularization, objections that state a discovery request is vague, overly broad, or unduly burdensome are, by themselves, meaningless, and without merit. *See e.g. Hall*, 173 F.R.D. at 470.

With respect to assertions of attorney-client privilege and work product immunity, while privileged information is exempted from discovery, the party withholding information bears the burden of demonstrating that the claimed protection attaches and must identify the applicable privilege with requisite specificity. *Id*., see also Fed. R. Civ. P. 26(b)(5) and Discovery Guideline 10 of the U.S. District Court for Maryland.

## IV.    ARGUMENT
### SPECIFIC DISCOVERY AT ISSUE

#### Arlinda Robinson's Requests for Production of Documents to MHM

**REQUEST NO. 2:   non-privileged documents, communications, statements, or reports in your possession or that you have requested including, without limitation, any documents requested or obtained pursuant to subpoena, information requests pursuant to federal, state, or local laws, or through any investigation related to: (1) James C. Robinson's diagnosis, treatment, evaluation, care, medication, housing, etc.; (2) the Occurrence; (3) any claims or defenses in this action; (4) the events leading up to the Occurrence; (5) James C. Robinson's failure to take and/or to receive his prescription medications between February 2, 2016 and March 14, 2016; (6) the failure to communicate to any person your recommendations, orders, directives, or instructions concerning James C. Robinson's diagnosis, treatment, evaluation, care, medication, and housing; or (7) James C. Robinson's suicide.**

RESPONSE TO REQUEST NO. 2:  Please see attached.

**REQUEST NO. 8:  All documents in any medium or form to which you had access (between February 2, 2016 and March 14, 2016) related to James C. Robinson, whether or not those documents were accessed by you during that time.**

RESPONSE TO REQUEST NO. 8:  Please see the electronic and paper medical record.

**REQUEST NO. 24:  Copies of any documents referring to or relating to any defenses asserted in your Answer to the Complaint.**

RESPONSE TO REQUEST NO. 24:  Please see attached.

DEFICIENCY OF THE RESPONSE TO REQUESTS NOS. 2, 8 AND 24 AND MHM'S SUPPLEMENT:

In its response to Plaintiff Arlinda Robinson's Request Nos. 2, 8, and 24, MHM directs Plaintiffs to all documents attached to the Responses, with no identification or explanation further as to which documents MHM believes to be responsive to each Request.  In fact, MHM did so little to identify specific documents in reference to these Requests that Plaintiffs initially believed MHM to not have produced responsive documents at all.  In its supplemental letter response of April 8, 2021, MHM referred generally to the 117 pages of documents produced pursuant to the initial Request production, but did nothing to identify the documents with any specificity.  *See MHM's Supplement Letter to Plaintiffs (April 8, 2021),* attached as **Exhibit 2,** at 1-2.

Further, the 117 pages referenced only include insurance declaration pages, work clearance forms, and 111 pages of what appears to be proposed, but not finalized, MHM internal policies and procedures.  Considering the subject matter of these documents, Plaintiffs are left to guess which documents are responsive to which Request(s).  As such, Plaintiffs are unable to identify whether information is missing from the production.  Plaintiffs request that MHM be directed to

specifically identify the documents it believes to be responsive to these requests by Bates number

so that the parties can efficiently and effectively clear up any production omissions.

**REQUEST NO 3: Any and all documents, communications, statements, notes, reports, or other writings made by you or anyone acting for you or on your behalf related to: (1) James C. Robinson's diagnosis, treatment, evaluation, care, medication, housing, etc.; (2) the Occurrence; (3) any claims or defenses in this action; (4) the events leading up to the Occurrence; (5) James C. Robinson's failure to take and/or to receive his prescription medications between February 2, 2016 and March 14, 2016; (6) the failure to communicate to any person your recommendations, orders, directives, instructions, etc. concerning James C. Robinson's diagnosis, treatment, evaluation, care, medication, and housing; or (7) James C. Robinson's suicide.**

RESPONSE TO REQUEST NO. 3:  Defendant objects to this Request to the extent that it seeks documents protected by the attorney client privilege, the work product doctrine, and/or the peer review privilege. As to those portions of this Request that are not objectionable, please see the medical chart already produced in discovery and the DPSCS, Internal Investigative Report No. CIR 163500554, together with the exhibits thereto.

**REQUEST NO. 4: All documents or communications (including by text, instant message, email, or any other means or method), or other information exchanged between you and any person related to: (1) James C. Robinson's diagnosis, treatment, evaluation, care, medication, housing, etc.; (2) the Occurrence; (3) any claims or defenses in this action; (4) the events leading up to the Occurrence; (5) James C. Robinson's failure to take and/or to receive his prescription medications between February 2, 2016 and March 14, 2016; (6) the failure to communicate to any person your recommendations, orders, directives, instructions, etc. concerning James C. Robinson's diagnosis, treatment, evaluation, care, medication, and housing; or (7) James C. Robinson's suicide.**

RESPONSE TO REQUEST NO. 4: Defendant objects to this Request to the extent that it seeks documents protected by the attorney client privilege, the work pr oduct doctrine, and/or the peer review privilege. As to those portions of this Request that are not objectionable, please see the medical chart that has already been produced and the DPSCS Internal Investigative Report No. CIR 163500554, together with the exhibits thereto.

**REQUEST NO. 5: All documents or communications related to your appearance before, attendance at, or meeting with any meeting of an administrative body, medical committee, official board of any medical society, or any other person for the purpose of discussing: (1) James C. Robinson's diagnosis, treatment, evaluation, care, medication, housing, etc.; (2) the Occurrence; (3) any claims or defenses in this action; (4) the events leading up to the Occurrence; (5) James C. Robinson's failure to take his medications as prescribed between February 2, 2016 and March 14, 2016; (6) the failure to communicate to any person your**

recommendations, orders, directives, instructions, etc. concerning James C. Robinson's diagnosis, treatment, evaluation, care, medication, housing, etc.; or (7) James C. Robinson's suicide.

RESPONSE TO REQUEST NO. 5: Defendant objects to this Request to the extent it seeks documents protected by the attorney client privilege, the work product doctrine, and/or the peer review privilege. As to those portions of this Request that are not objectionable, none other than the Morbidity and Mortality records already produced in discovery by the Co-Defendants.

**REQUEST NO. 23: All documents or communications exchanged between you Dr. Pinn, Dr. Pytlewski, DPSCS, ECI, and/or the State of Maryland concerning the Occurrence, James C. Robinson, and/or James C. Robinson's suicide.**

RESPONSE TO REQUEST NO. 23: Defendant objects to the extent that this Request seeks communications between undersigned counsel and Co-Defendants counsel on the grounds that such documents are privileged communications subject to an (oral) joint defense agreement. Defendant further objects to the extent that this Request seeks documents protected from disclosure pursuant to the attorney client privilege and/or the work product doctrine. Subject to and without waving the above objections, communications regarding the rendering of mental health care to the Decedent is contained in the medical chart.

**REQUEST NO. 25: All Administrative Rules and Guidelines, books, protocols, directives, and Administrative Procedures required to be followed by psychiatrists who you employ who consulted with and/or treated prisoners in Maryland for the period of January 1, 2010 through May 1, 2016.**

RESPONSE TO REQUEST NO. 25: Defendant objects to this Request as overly broad, unduly burdensome, vague, and not amenable to a response as phrased. Defendant further objects to the extent that this Request seeks the production of confidential documents.

**REQUEST NO. 28: All documents concerning your communication protocols and requirements between your employees and employees of the State of Maryland concerning prisoners for whom you or your employees are providing healthcare and/or psychiatric care.**

RESPONSE TO REQUEST NO. 28: Defendant objects to this Request as overly broad, unduly burdensome, vague, and not amenable to a response as phrased. Defendant further objects to the extent that this Request seeks the production of confidential documents.

**REQUEST NO. 29: All documents describing and/or related to your compensation from the State of Maryland and/or its agencies for healthcare services that you render in Maryland prisons.**

<u>RESPONSE TO REQUEST NO. 29:</u> Defendant objects to this Request because it seeks discovery that is not related to any party's claims or defenses and because it is overly broad and unduly burdensome. Defendant further objects to the extent that this Request seeks the production of confidential documents.

**<u>REQUEST NO. 30</u>: All documents reflecting prior incidents at ECI similar to the circumstances described in the Complaint.**

<u>RESPONSE TO REQUEST NO. 30</u>:  Defendant objects to this Request because it seeks discovery that is not related to any party's claims or defenses and because it is overly broad and unduly burdensome. Defendant further objects to the extent that this Request seeks the production of confidential documents and/or documents protected from discovery by HIPAA. Subject to and without waving any objections, please see the documents produced by the Co-Defendants pertaining to suicide statistics.

<u>DEFICIENCY OF THE RESPONSE TO REQUESTS NOS. 3-5, 23, 25, 28, 30 AND MHM'S SUPPLEMENT</u>:

MHM provides identical boilerplate objections (i.e. overly broad, unduly burdensome, vague, and seeking confidential documents) to all referenced Responses.

MHM inexplicably claims that these requests are seeking the production of confidential information.  However, MHM again fails to state why the Stipulated Protective Order (ECF 53) is insufficient to protect these records.  Plaintiffs suspect that this is yet another evasive tactic being used by MHM to avoid producing discoverable materials that it knows to be relevant to Plaintiffs' claims.  Further, these Requests are neither overly broad nor unduly burdensome and they are reasonably specific to allow responsive information by MHM.  It is pivotal that Plaintiffs obtain information regarding the history of management and care of prisoners with serious mental health concerns. The information sought in these Requests is directly relevant to achieving this goal and is sufficiently tailored to meet such ends.

In its supplemental response, MHM states that "we have just received additional emails that Centurion identified that may be responsive to Plaintiffs' discovery requests.  All responsive, non-privileged emails will be timely produced and any responsive privileged documents will be

identified via the Privilege Log." *See* **Exhibit 2,** at 3.  However, MHM has failed to produce these emails, or a privilege log, nor has it provided supplemental responses to the remainder of the Requests.

Further, MHM objects under Maryland's peer review privilege for its withholding responses to Request Nos. 3-5 and 23.  In its supplemental response letter, MHM maintains that the Maryland peer review privilege applies (*see* Ex. 2, at 2), disregarding the fact that the Fourth Circuit Court of Appeals long ago explained that federal courts do not recognize a medical peer review privilege. *See, e.g., Virmani v. Novant Health Inc*., 259 F.3d 284, 286-87 (4th Cir. 2001) (noting that every federal circuit that has addressed the issue of a federal medical peer review privilege has flatly rejected the assertion).  As such, and to the extend there are actual applicable privilege concerns, MHM should provide a privilege log in accordance with Federal Rule 26(b)(5) and Local Rule App'x A, Guideline 10, for each document for which a privilege/protection is asserted.

**REQUEST NO. 11**:  **A complete copy of the file of all experts with whom you have consulted in connection with any aspect of this litigation.**

RESPONSE TO REQUEST NO. 11: Defendant   will   make   all   non-privileged,   discoverable aspects of its expert's file available at the expert's deposition.

**REQUEST NO. 12**:  **All documents, communications, or things exchanged between you or your agent(s) and anyone with whom you have consulted with in connection to this matter, or that you expect to call as an expert witness at trial or that were, prepared, consulted, or reviewed in connection with their assignment in this matter by any such person.**

RESPONSE TO REQUEST NO. 12:  Defendant will make all non-privileged, discoverable aspects of its expert's file available at the expert's deposition.

**REQUEST NO. 13**:  **All results, procedures, data collected, notes, and reports prepared during or as the result of any tests, surveys, or contemplated tests or surveys performed by any person with whom you have consulted in reference to this matter, or that you expect to call as an expert witness at trial in connection with their work on this case.**

<u>RESPONSE TO REQUEST NO. 13</u>:  Defendant will make all non-privileged, discoverable aspects of its expert's file available at the expert's deposition.

<u>DEFICIENCY OF THE RESPONSE TO REQUESTS NOS. 11, 12, 13 AND MHM'S SUPPLEMENT</u>:

These Requests seek documents and communications regarding the information relied upon by MHM's expert witnesses.  Each objection states that the information will be made available at the expert deposition.  However, this objection is unacceptable and not permitted as Federal Rule 34(b)(2)(A) requires a party to produce responsive documents "within 30 days after being served." Rule 34 does not include a provision that extends a party's response time with respect to expert discovery.  Rule 26(b)(4)(C) provides that communications between counsel and a retained expert are discoverable to the extent that they discuss the expert's compensation, facts or data considered by the expert in forming his/her opinions, and relied-upon assumptions provided by counsel. Accordingly, Plaintiffs are entitled to these documents.

Further, MHM suggests that documents are being withheld on a basis of privilege but have failed to include such withholdings on a privilege log.

<u>Arlinda Robinson's Interrogatories to MHM</u>

<u>INTERROGATORY NO. 1</u>:  **Identify all persons who undertook to investigate the Occurrence, the events leading up to the Occurrence, or anything else related to James C. Robinson between October 2, 2015 and the present, and for each such person state:**
  a. **Their title or position;**
  b. **The dates during which they conducted their investigation;**
  c. **The identify of each person contacted or to whom the investigator spoke related to their investigation;**
  d. **Any remedial or corrective action taken as a result of the investigation; and**
  e. **Whether any report or other document or communication exists related to their investigation and the identity of the current custodian of any such material.**

<u>ANSWER TO INTERROGATORY NO. 1</u>: Defendant objects to this Interrogatory to the extent that it seeks information protected by the work product doctrine and/or any investigation done in the anticipation of litigation. Moreover, Defendant objects to the extent that it seeks discovery

regarding subsequent remedial measures and any such measures taken would be inadmissible at trial. Subject to and without waiving the above objections, please see the Maryland Department of Public Safety & Correctional Services ("DPSCS"), Internal Investigative Report No. CIR 163500554, together with the exhibits thereto (which is already in Plaintiffs' possession). Defendant also refers Plaintiff to the documents produced in the March 16, 2016 morbidity and mortality meeting, which have already been produced in discovery.

DEFICIENCY OF THE ANSWER TO INTERROGATORY NO 1. AND MHM'S SUPPLEMENT:

In its Answer to Interrogatory No. 1, MHM objects and claims protection regarding subsequent remedial measures and inadmissibility.  In its supplemental letter, MHM changes tactics and claims the protection of Maryland Health Occupational Code as its reason for refusing to provide information relevant to this Interrogatory.  *See* Ex. 2, at 2.  MHM now claims that Maryland Health Occ. Code § 401(d)(1), a state-based code that provides, "Except as otherwise provided in this section, the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action," is applicable to this action and prevents the disclosure of all information in this Interrogatory.  *See* **Exhibit 2,** at 3.  Plaintiffs maintain that the information requested in this Interrogatory is not protected from disclosure pursuant to Maryland Health Occ. Code § 401(d)(1) because this statute only applies to state-based civil complaints, not those enforcing federal constitutional rights.  *See, e.g., Virmani, supra*. Moreover, § 401(d)(1) does not address subsequent remedial measures at all.  That said, even if the information is later found to be inadmissible at trial, the information is still discoverable as Rule 26(b)(1) provides that a party may discover "any nonprivileged matter that is relevant to any party's claim or defense[,]" and that discoverable information "need not be admissible in evidence to be discoverable."

After raising these insufficient objections, MHM continues by directing Plaintiffs to an internal investigative report, all documents produced thus far by all parties, and a morbidity and

mortality meeting record (also produced by other parties).  In MHM's supplemental letter, it added

a reference to Detective David Marquette's deposition record.  None of the referenced exhibits in

MHM's response or supplemental response address the information sought in Interrogatory No. 1.

MHM should be directed to immediately supplement this substantially lacking Answer.

**INTERROGATORY NO. 3:  Identify and describe all documents or sources information in any medium or form which were in the possession, custody, or control of or to which MHM or any person acting for or on its behalf had access (between September 1, 2015 and March 31, 2016) related to James C. Robinson, and for each category of documents or source of information state: (1) how it would have been able to access the documents or source of information; (2) what type of information would be expected to be contained in each category of documents or source of information; (3) which of those documents or sources of information was accessed before March 14, 2016, and (4) identify each person who accessed each such document or source of information and state what documents or information each such person accessed before March 14, 2016.**

ANSWER TO INTERROGATORY NO. 3:  Defendant objects to this Interrogatory as overly broad and unduly burdensome. Defendant also objects to this Interrogatory to the extent that it seeks information protected by the attorney client privilege, the work product doctrine, and/or the peer review privilege. Defendant also objects to this Interrogatory as vague as it is unclear what is meant by "access" to documents. Further, Defendant objects because this Interrogatory consists of multiple Interrogatory questions. Subject to and without waiving these objections, Defendant refers Plaintiff to the medical/mental health chart from the prison. Disciplinary information is contained in OCMS. MHM does not have access to OCMS. Certain aspects of the file, such as the Medication Administration Record were contained in the hard copy file but not in the electronic file.

DEFICIENCY OF THE ANSWER TO INTERROGATORY NO 3. AND MHM'S SUPPLEMENT:

MHM objects to this Interrogatory as overly broad and unduly burdensome but again fails

to state with particularity why these boilerplate objections apply.  In fact, this Interrogatory is

narrowly and specifically tailored to the individuals involved in this case and directly relates to

Plaintiffs' ongoing need to fully comprehend the inner-workings of MHM and the State's methods

of handling Mr. Robinson's serious mental health needs.

MHM continues its evasive tactics by claiming the term "access" is vague.  To alleviate this alleged confusion, Plaintiffs offered MHM the Miriam-Webster definition of "access" in their March 2, 2021 deficiency letter.  Yet, even with this clarification, MHM continues to provide information not at all relevant to the Interrogatory.  Thus far, MHM has directed Plaintiffs to the medical/mental health chart from the prison and offered a statement that MHM does not have access to disciplinary action materials.  A plain review of the Interrogatory shows that this is simply not the information being sought.  As such, MHM should be compelled to respond in full.

MHM also raises the attorney-client privilege, the work product doctrine, and/or the peer review privilege.  It is unclear how the information requested in this Interrogatory could possibly intrude upon any of these privileges.  However, to the extent there are actual applicable privilege concerns, MHM must provide a privilege log in accordance with Federal Rule 26(b)(5) and Local Rule App'x A, Guideline 10, for each document for which a privilege/protection is asserted.

**INTERROGATORY NO. 6:  If you contend that any person (whether or not a party to this action) made any admission or statement against interest related to the Occurrence, the events leading up to the Occurrence, James C. Robinson's diagnosis, treatment, evaluation, care, medication, and housing at ECI, or the plaintiffs' damages as alleged, then set forth the identity of the individual making the alleged admission or statement, the date, time, and location where the alleged admission or statement was made, all witnesses thereto, and describe the alleged admission or statement.**

ANSWER TO INTERROGATORY NO. 6:  Defendant is not aware of any statements against interest other than any such statements that may be contained in the medical records.

DEFICIENCY OF THE ANSWER TO INTERROGATORY NO 6. AND MHM'S SUPPLEMENT:

MHM's submission that it is unaware of statements against interest and its offer of vague references to the medical record are insufficient for a number of reasons.  First, MHM has failed to produce a single medical record for Mr. Robinson.  In fact, in response to Plaintiffs' deficiency letter, MHM simply directed Plaintiffs to Mr. Robinson's medical chart which was produced by

the State without any attempt to direct Plaintiffs to the specific records that are responsive to the Interrogatory.  Second, MHM makes no attempt to identify individuals or statements to which it may be referring.

In its Answer, MHM evades responding to a direct and easily understood Interrogatory. MHM should be ordered to supplement its Answer to provide thorough and complete information with direct record citations when applicable.

**INTERROGATORY NO. 7**:  **If you contend that any other person, whether or not a party to this action, caused or contributed to: (1) the Occurrence; (2) the events leading up to the Occurrence; (3) James C. Robinson's failure to take and/or receive his prescription medications between February 2, 2016 and March 14, 2016; (4) the failure to communicate to any person any recommendations, orders, directives, instructions, etc. concerning James C. Robinson's diagnosis, treatment, evaluation, care, medication, housing, etc.; or (5) James C. Robinson's suicide, then identify any such person, describe in detail all factual bases that support your contention, and identify all documents that support your contention and their present location.**

ANSWER TO INTERROGATORY NO. 7:  Defendant objects to this Interrogatory to the extent it assumes that any health care provider is responsible for Mr. Robinson's suicide, which has not been proven in this case. Defendant further objects to this Interrogatory as overly broad, unduly burdensome, and not amenable to response in this fashion. Defendant also objects to this Interrogatory as premature and an improper attempt to shift the burden of proof to the defense. Defendant also objects to this Interrogatory to the extent that it seeks expert witness opinions. As to those parts of this Interrogatory that are not objectionable, Defendant notes that it was never informed by Mr. Robinson (or anyone else) of various events that transpired after leaving the close observation area (such as, but not necessarily limited to, Mr. Robinson's non-compliance with medication, the ruling from Mr. Robinson's disciplinary hearing, the fact that Mr. Robinson no longer had a cellmate, and that Mr. Robinson's relationship with his girlfriend purportedly ended). Defendant also incorporates by reference the future deposition testimony of Dr. Pytlewski, Dr. Pinn and any other healthcare provider who cared for Mr. Robinson; any deposition testimony of any correctional officer who interacted with Mr. Robinson during March 2016, and the future deposition testimony of any expert witness designated by Defendant. Defendant further incorporates herein by reference the expert reports prepared by Dr. Penn. Defendant also refers Plaintiff to Mr. Robinson's medical records. Defendant expressly denies that its providers breached the standard of care or negligently caused or contributed to any injuries claimed to have been sustained by Mr. Robinson. Defendant also expressly denies that its providers were deliberately indifferent to Mr. Robinson's needs.

DEFICIENCY OF THE ANSWER TO INTERROGATORY NO. 7 AND MHM'S SUPPLEMENT:

MHM objects that this Interrogatory is overly broad, unduly burdensome, and "not amenable to response in this fashion."   MHM then offers a smattering of nonresponsive information without actually answering any portion of this Interrogatory. As to its objections, MHM has again failed to state, beyond boilerplate objections, why the Interrogatory is too broad or burdensome to answer.  In reality, the information requested is directly relevant to the claims in this matter and there is no reason at this stage in the case that MHM should be disadvantaged in time or resources in providing information regarding any third parties it claims are responsible for the Occurrence.  In fact, Plaintiffs imagine it to be in the best interest of MHM to provide information at to any other party or person who may be liable as it may lessen the liability of MHM.  Beyond this, Plaintiffs are entitled to know whether the defenses of MHM include a third party prior to trial.  In its supplemental responses, MHM provides only that "it is MHM's position that Mr. Robinson's actions caused and/or contributed to his death." *See* **Exhibit 2,** at 3.  This answer fails to address whether MHM believes that another individual, healthcare provider or otherwise, as well as Mr. Robinson's own actions, contributed to his death and fails to answer any of the subsections of the Interrogatory.  As such, MHM should be ordered to fully respond to this Interrogatory.

**INTERROGATORY NO. 9:  State the exact dates and places any person employed by or acting for or on behalf of MHM saw James C. Robinson for the purpose of providing diagnosis, consultation, evaluation, care, treatment, and medication management, and for each such instance state: (1) the purpose of that encounter; (2) the findings, recommendations, orders, directives, or instructions of any such person; (3) the identity of the persons to whom any such person conveyed any of their findings, recommendations, orders, directives, or instructions; and (4) what, if any, follow-up any such person undertook to ensure that their findings, recommendations, orders, directives, or instructions were followed.**

ANSWER TO INTERROGATORY NO. 9:  Defendant objects to this Interrogatory overly broad and unduly burdensome. As to those parts of this Interrogatory that are not objectionable, Defendant refers Plaintiffs to the prison medical/mental health chart. Defendant is willing to respond to requests regarding any relationship a specific health care provider(s) identified by Plaintiffs has with MHM; however, it will not go through the chart and identify every provider identified therein since doing so would be unduly burdensome.

DEFICIENCY OF THE ANSWER TO INTERROGATORY NO. 9 AND MHM'S SUPPLEMENT:

MHM focuses its objection in its Answer to Interrogatory No. 6 on claims that the requested scope of information is overly broad and unduly burdensome as identifying providers within the record would be unduly burdensome.  In contradiction to its objection, MHM then directs Plaintiffs to specific documents within the records produced by the State, and in its April 8, 2021 supplemental letter, MHM implies that responsive information may be located within Mr. Robinson's file, but that "it would be unduly burdensome for MHM to review Mr. Robinson's entire medical chart and identify which individual providers were employees of MHM." *See* **Exhibit 2,** at 3.  However, if this is in fact the only system at MHM's disposal to determine which of its employees worked with Mr. Robinson and when, which Plaintiffs suspect is not the case, the relevance of this information substantially outweighs any burden that might be faced by MHM in this endeavor.

It is ironic at best that MHM argues that a review of the entire medical record would be unduly burdensome when many of MHM's responses to discovery requests direct Plaintiffs perform a scavenger hunt for their own discovery responses.  MHM habitually directs Plaintiffs to the entirety of the medical record, which the State produced, when it knows Plaintiffs to be at a substantial disadvantage in finding the responsive information on their own.  Further, MHM directly employs the individuals being sought in the Interrogatory and provides no explanation as to why it would be unduly burdensome to provide information at to the MHM employees they

already know to have been employed and working with Mr. Robinson prior to his death.  Indeed,

Plaintiffs have no way to discern which individuals identified in the State's production work for

MHM.

**INTERROGATORY NO. 11:  Since March 14, 2016, have you attended, participated in, or met with, any administrative body, medical committee, official board of any medical society, or any other person or entity for the purpose of discussing the Occurrence, the events leading up to the Occurrence, or otherwise related to James C. Robinson, and if so, for each such instance state: (1) the date on which the appearance, attendance, or meeting was requested or occurred; (2) the identity of the person(s) requesting the appearance, attendance, or meeting; (3) who attended each such appearance or meeting; and (4) briefly describe what occurred at any appearance, attendance, or meeting that took place.**

ANSWER TO INTERROGATORY NO. 11:   Defendant objects to the extent that this Interrogatory seeks information protected by the attorney client privilege, the work product doctrine, and/or the peer review privilege. Defendant further objects to the extent that this question is geared towards an individual not a business entity. As to those parts of this Interrogatory that are not objectionable, Defendant refers Plaintiffs to the DPSCS Internal Investigative Report No. CIR 163500554. Additionally, representatives of Defendant attended the March 16, 2016 Morbidity and Mortality meeting.

DEFICIENCY OF THE ANSWER TO INTERROGATORY NO. 11 AND MHM'S SUPPLEMENT:

MHM focuses its objection in its Answer to Interrogatory No. 6 on violations of attorney-

client privilege, the work product doctrine, and/or the peer review privilege.  Even if, *arguendo*,

any of these objections apply to the findings of any such administrative review, they do not include

the information sought in subsections 1 and 2 of this Interrogatory.

Again, in contradiction to its privilege objections, MHM directs Plaintiffs to the DPSCS

Internal Investigative Report No. CIR 163500554 and states that "representatives of Defendant

attended the March 16, 2016 Morbidity and Mortality meeting."  However, MHM fails to provide

any of the identifying information requested in the Interrogatory.  Although MHM was requested

to supplement this Answer with identifying information, it failed to do so.  Instead, in its

supplemental letter, MHM notes that it "currently does not who specifically attended the March

16, 2016, Morbidity and Mortality Meeting other than Dr. Pytlewski.  With that being said, Dr.

Pytlewski stated that in attendance were member(s) of custody leadership staff, member(s) from

Wexford medical leadership staff, and possibly others." *See* **Exhibit 2,** at 4.  MHM continues by

suggesting that it is investigating the attendees and will provide supplemental information.  MHM

has not provided any information since the April 8, 2021 letter and has provided no reason why it

cannot utilize this information to determine the identities of those in attendance.  As such, MHM

should be ordered to immediately supplement this Answer.

**INTERROGATORY NO. 20: Identify the name, address, and telephone number of all
witnesses (fact, expert, hybrid, etc.) who will testify on your behalf at trial, and for each such
person, describe your understanding of their knowledge related to this case and the matters
about which they will testify.**

ANSWER TO INTERROGATORY NO. 20:  Defendant objects to this Interrogatory as premature
and to the extent that it seeks information protected by the work protect doctrine since it seeks the
matters about which the witnesses will testify about at trial. As to those portions of this
Interrogatory that are objectionable, all such witnesses will be disclosed during the course of
discovery. Defendant has not determined who it will call as witnesses at trial.

DEFICIENCY OF THE ANSWER TO INTERROGATORY NO. 11 AND MHM'S
SUPPLEMENT:

In its supplemental letter, MHM stated that it does not yet know what witnesses it intends

to call at trial.  *See* Ex. 2, at 4.  Although it has been six months since the supplemental response

letter, MHM has failed to provide the identity of any of its potential witnesses.  Pursuant to Federal

Rule 26(a)(1)(A), MHM is required to provide such information and should be ordered to do so.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an order

compelling MHM to produce complete responses to the Plaintiffs' Interrogatories and Requests

for Production of Documents, and award the Plaintiffs their attorneys' fees in preparing and

pursuing this Motion to Compel.

**David Daneman, Federal Bar No.: 06976**
**Allen E. Honick, Federal Bar No.: 19822**
**WHITEFORD, TAYLOR & PRESTON, L.L.P.**
Seven St. Paul Street, Suite 1500
Baltimore, Maryland 21202-1636
(410) 347-8700
ddaneman@wtplaw.com
ahonick@wtplaw.com
*Attorneys for Plaintiffs*

*11999326*