# EXHIBIT 1

GOOD FAITH EFFORTS

**BRIAN E. FROSH**
Attorney General

**ELIZABETH F. HARRIS**
Chief Deputy Attorney General

**CAROLYN QUATTROCKI**
Deputy Attorney General

**STUART M. NATHAN**
Assistant Attorney General
Principal Counsel

**MICHAEL O. DOYLE**
Assistant Attorney General
Deputy Counsel - Litigation

**LISA O. ARNQUIST**
Assistant Attorney General
Deputy Counsel
Procurement/Personnel

**SUSAN HOWE BARON**
**JUDITH A. BARR**
**MARY BETH COLLINS**
**SHARON E. CONNERS**
**CHRISTOPHER A. HINRICHS**
**BEVERLY F. HUGHES**
**SAMANTHA N. LEWIS**
**MATTHEW W. MELLADY**
**LAURA MULLALLY**
**JAMES S. PASKO**
**MERRILYN E. RATLIFF**
**JOSEPH M. THOMAS**

Assistant Attorneys General



**STATE OF MARYLAND**
OFFICE OF THE
ATTORNEY GENERAL
Department of Public Safety and
Correctional Services
6776 Reisterstown Road, Suite 311
Baltimore, Maryland 21215

TELECOPIER NO.
410-484-5939

WRITER'S DIRECT DIAL NO.
410-585-3070

October 7, 2022

**VIA ELECTRONIC MAIL (allen@fhjustice.com)**

Allen Honick
Furman Honick Law
11155 Red Run Blvd., Ste. 110
Owings Mills, Maryland 21117

David Daneman
Whiteford, Taylor & Preston LLP
7 Saint Paul Street, Suite 1400
Baltimore, Maryland 21202

  **Re:** **Arlinda Robinson, et al. v. David Pytlewski, et al**
     **Case #19-cv-01025-PX**

Dear Messrs. Daneman and Honick:

   In response to the Court's September 7, 2022, Order in this matter (ECF No. 116), ordering the State Defendants to produce "[i]n response to Requests for Production Nos. 11, 29, and 30: all Mortality Reviews, Quality Assurance Reviews and Corrective Action Plans related to every suicide that occurred at ECI between 2012 and 2016;" and "[i]n response to Request for Production No. 20: the entirety of the suicide database dating

back to 2008," please accept the enclosed documents as supplementation to the State of Maryland's Responses to Request for Production of Documents:

- Produced as Bates nos. STATE-J-000001 to 000069: Death review investigation documentation for three inmates who completed suicide at the Eastern Correctional Institution between 2012 and 2016 (███████████ ████████████████████). A corrective action plan was not requested for any of these incidents, therefore there are none to produce. Per the confidentiality order entered in this case, we have designated these materials Confidential-Attorneys' Eyes Only as containing medical information of a person other than Decedent James Robinson. The death review investigation for Mr. Robinson has already been produced.

- Produced as Bates nos. STATE-J-000070 to 000302: The complete Suicide Notification Form Database maintained by Dr. Lynda Bonieskie in response to Request for Production No. 20, which asked for "All Suicide Notification Forms (DPSCS Form OPS 124-420-4) from January 1, 2008 through December 31, 2016." Dr. Bonieskie began the Suicide Notification Form Database in 2012, so it will not contain records from before 2012. This information will be designated as Confidential-Attorneys Eyes Only for the same reasons as above. In accordance with the Request, data after December 31, 2016 has been redacted, as you will see at Bates Nos. STATE-J-000186-000296, 000298-000300.

The Suicide Notification Form Database memorializes the paper forms prepared when an inmate exhibits a suicide indicator(s) and tracks four pieces of information: inmate name, institution, date, and type of suicidal indicator (ideation, gesture, attempt, completion). The "suicide database" discussed by the parties and the Court in the August 23, 2022, hearing on the Motions to Compel was the Suicide Notification Form Database, as this was the only database the parties were aware of at the time.

However, while speaking with Dr. Bonieskie last week, undersigned counsel became aware that she maintains two (2) databases: (1) the aforementioned Suicide Notification Form Database; and (2) a separate database that tracked only completions (hereinafter the "Completed Suicide Database"). Both databases are Excel spreadsheets.

We received the Completed Suicide Database for review on Tuesday of this week. The Completed Suicide Database collects records of completed suicides, including detailed medical information, dating back to 2001. The four pieces of information tracked in the Suicide Notification Database are also included (as to completions only) in the Completed Suicide Database. The Completed Suicide Database also contains information concerning the four inmates who completed suicide at ECI between 2012 and 2016.

To adhere to the contours of the Court's Order, we plan to produce the following relevant portions of the Completed Suicide database entries from 2008 to 2016:

- For 2008-2012 (the period of time included in the Court's Order as to Request No. 20, but not covered by the Suicide Notification Form Database which only began in 2012) we will produce the columns of the Completed Suicide Database that contain information that would otherwise be available in the Suicide Notification Form Database – name of inmate, institution, and date of suicide. Unlike the Suicide Notification Form Database, there is no field for "type" in the Completed Suicide Database because it contains only completed suicides.

- For 2012-2016, we will provide the columns in the Completed Suicide Database containing information that would already be produced in the Suicide Notification Form Database from 2012-2016, i.e. name of inmate, institution, and date of suicide.

- In keeping with the Court's order to produce the reviews concerning "every suicide that occurred at ECI between 2012 and 2016," the four (4) rows of the Completed Suicide Database concerning Mr. Robinson, Mr. Hawkins, Mr. Creason, and Mr. Schirling will be produced in their entirety.

- All other rows and entries of the Completed Suicide Database, including all material before January 1, 2008 and after December 31, 2016, will be redacted.

- The portions of the Completed Suicide Database described above will be produced as Confidential-Attorneys' Eyes Only.

We will produce the relevant portions of the Completed Suicide Database as quickly as possible, and hope to do so by the middle of next week. Thank you for your time and attention to this matter.

Very truly yours,

Merrilyn E. Ratliff

Enclosures
cc:    Jason Engel (jengel@kiernantrebach.com)

FURMAN | HONICK LAW

ALLEN E. HONICK
DIRECT DIAL: (410) 999-8758
allen@fhjustice.com

11155 RED RUN BOULEVARD, STE. 110
OWINGS MILLS, MARYLAND 21117
MAIN TELEPHONE: (410) 844-6000
FACSIMILE: (410) 705-5651

WWW.FURMANHONICK.COM

October 17, 2022

**VIA EMAIL** merrilyn.ratliff@maryland.gov

Merrilyn E. Rattliff, Esq.
MARYLAND OFFICE OF THE ATTORNEY GENERAL
  Dept. of Public Safety & Corr. Servs.
6776 Reisterstown Road, Suite 311
Baltimore, Maryland 21215

   **RE:**   **Discovery Deficiency Letter**
        (***Robinson v. Pytlewski, et al.***, No. 8:19-cv-01025-DLB)

Dear Ms. Ratliff:

   Please accept this letter in response to your letters and supplemental document productions dated October 7 and October 14, 2022, pursuant to the Court's Order (ECF 116) regarding the Plaintiffs' Motion to Compel. Below, I outline several deficiencies in your supplemental production, and I ask you to kindly supplement your discovery responses accordingly. This is a good faith attempt to resolve an ongoing discovery dispute and to enforce the terms of the Court's Order (ECF 116).

  **1.** ██████████████████████



  **2.** **Request No. 20:**

  **A.** **STATE-J-000070 – 000302 (Suicide Notification Form Database)**

   First, you produced screenshots of Dr. Bonieskie's Suicide Incident Database that you presumably captured from the native software platform where the database exists, Microsoft Excel. Please produce the native file in Excel format with all metadata preserved, pursuant to Rule 34(b)(2)(E), because Dr. Bonieskie explained that the State maintains and stores this database in Excel format.

   Second, the screenshots that you produced as STATE-J-000070–000148 (suicide attempts from 1/2012 to 6/2015) omit several columns of information that are listed on the screenshots

produced as STATE-J-000153–000186 (suicide attempts from 7/2015 to 12/2016). The specific columns at issue are: "Single Cell?," "Housing Type," and "Other Housing." Although both sets of identified date ranges include these columns as headings, only the 2015–2016 attempts (000153–000186) have substantive information filled in for these columns. The 2012–2015 attempts (000070–000148) entirely omit this substantive information. Please either supplement your production with the completed columns or explain why that data has been omitted from the 2012 to 2015 attempts.

Third, please identify the document that you produced at STATE-J-000297. This document is different from the preceding 200+ pages of spreadsheet data, both in its appearance and data. Also, this document contains data for 2013 to 2016, which does not comport with the date ranges referenced in the Court's Order. We need some clarity here.

Fourth, you produced a summary sheet at STATE-J-000177, which shows the total suicide attempts by housing unit type for the 2016 fiscal year.[1] However, you did not produce a similar summary sheet for any previous year. Similarly, you produced "Facility Totals" for FY 2015 (000149), FY 2016 (000171), and FY 2017 (000195), but did not produce that data for FY 2012–2014. Please either supplement your production with the 2012–2015 summary sheets and the FY 2012–2014 Facility Totals or explain why that data is not available.

Fifth, please identify the document numbered STATE-J-000302 and describe what it purports to show.

Finally, you produced a summary of suicide attempts from July 2013 to December 2016 at STATE-K-000300–00301. However, you state in your October 7 letter that you are producing the relevant data beginning in 2012. Kindly supplement your production with the suicide attempt data summary for January 2012 to June 2013 accordingly.

**B. STATE-J-000303–000317 (Completed Suicide Database)**

Preliminarily, you state in your October 7 letter that you just "became aware that [Dr. Bonieskie] maintains two (2) databases"—the Suicide Notification Form Database (referenced above in Sec. A), and a "Completed Suicide Database." However, Dr. Bonieskie discussed both sets of data at her deposition in October 2021. Since then, we have operated under the assumption that both the suicide attempts and suicide completion data were maintained in the same database but under different sheets/workbooks. Your October 7 letter revealed that Dr. Bonieskie stores the attempts and completion data as two separate spreadsheets. Accordingly, please accept this as the Plaintiffs' formal request for the entire Completed Suicide Database back to 2008, which corresponds with the time frame imposed by the Court's Order compelling the State to produce "the entirety of the suicide database back to 2008" (ECF 116).

In your October 7 letter, you state that you are only producing a limited and heavily redacted set of data from the Completed Suicide Database for the years 2008 to 2012, which you

---

[1] You produced a similar summary at STATE-J-000224 for FY 2018, but that information is redacted because it occurred after Mr. Robinson's death.

have limited to "the following relevant portions:" prisoner name, institution, and date of suicide. You claim that you are limiting the data to the aforementioned columns and redacting the rest because these columns "contain information that would otherwise be available in the Suicide Notification Form Database." You only produced the unredacted Completed Suicide Database for the four suicides at ECI between 2012 and 2016. Your supplemental production is deficient for the following reasons.

First, the Completed Suicide Database information that you produced for suicides between 2008 and 2012 is redacted to the point that we cannot discern either the method of these suicides or the housing status of the decedents.

Second, the Suicide Notification Form Database contains more columns than the limited data you provided from the Completed Suicide Database. For example, the 2012 data (STATE-J-000070) provides the incident date, prisoner name, facility, and method for each documented attempt. Moreover, the 2015 data (STATE-J-000153) adds columns for single cell, housing type, and other housing. However, the redacted data that you produced from the Completed Suicide Database for 2008 to 2012 omits method, single cell, housing type, and other housing.

Third, all the columns in the Completed Suicide Database are plainly relevant here, so we ask you to supplement your production with an unredacted copy of the Database for all completed suicides between 2008 and 2016. We incorporate by reference the Court's specific holding about this data in its Memorandum Opinion of September 7, 2022 (ECF 115 at 22–25) (holding that the suicide data preceding Mr. Robinson's death is relevant and producing that data vis-à-vis Excel sheets is not an undue burden for the State).

In sum, please supplement your discovery, as follows:

1. All Mortality Reviews and/or Quality Assurance Reviews associated with  suicide at ECI on February 1, 2012;

2. Both the Suicide Notification Form Database and the Completed Suicide Database in their native Microsoft Excel format;

3. Either a supplemental production or an explanation as to why the Suicide Notification Form Database for 2012 to 2015 omits all cell status and housing information;

4. Identify the document produced as STATE-J-000297;

5. Either a supplemental production or an explanation as to why the 2012–2015 summary sheets and the FY 2012–2014 Facility Totals are omitted from the Suicide Notification Form production (with only the 2016 summary produced);

6. Identify the document produced as STATE-J-000302;

7. Suicide attempt data summary for January 2012 to June 2013; and

8. The unredacted Completed Suicide Database from 2008 to 2016.

Please respond to this letter and supplement your discovery by close of business on Friday, October 21, 2022, or we will have no choice but to raise this dispute with the Court. Time is of the essence, especially because the Court intends to schedule mediation in the coming weeks. This is a good faith attempt to resolve an ongoing discovery dispute.

Please do not hesitate to contact me with any questions.

Sincerely,

Allen E. Honick
Partner

AEH/ha

cc:     Michael O. Doyle, Esq. (*via email*)
        Jason R. Engel, Esq. (*via email*)
        David Daneman, Esq. (*via email*)

**BRIAN E. FROSH**
**Attorney General**

**ELIZABETH F. HARRIS**
**Chief Deputy Attorney General**

**CAROLYN QUATTROCKI**
**Deputy Attorney General**



**STUART M. NATHAN**
**Assistant Attorney General**
**Principal Counsel**

**MICHAEL O. DOYLE**
**Assistant Attorney General**
**Deputy Counsel - Litigation**

**LISA O. ARNQUIST**
**Assistant Attorney General**
**Deputy Counsel**
**Procurement/Personnel**

**SUSAN HOWE BARON**
**JUDITH A. BARR**
**MARY BETH COLLINS**
**SHARON E. CONNERS**
**CHRISTOPHER A. HINRICHS**
**BEVERLY F. HUGHES**
**SAMANTHA N. LEWIS**
**MATTHEW W. MELLADY**
**LAURA MULLALLY**
**JAMES S. PASKO**
**MERRILYN E. RATLIFF**
**JOSEPH M. THOMAS**

**Assistant Attorneys General**

**STATE OF MARYLAND**
**OFFICE OF THE**
**ATTORNEY GENERAL**
**Department of Public Safety and**
**Correctional Services**
**6776 Reisterstown Road, Suite 311**
**Baltimore, Maryland 21215**

TELECOPIER NO.
410-484-5939

WRITER'S DIRECT DIAL NO.
410-585-3070

October 27, 2022

**VIA ELECTRONIC MAIL (allen@fhjustice.com)**
Allen Honick
Furman Honick Law
11155 Red Run Blvd., Ste. 110
Owings Mills, Maryland 21117

      **Re:** *Arlinda Robinson, et. al v. David Pytlewski, et. al.*
           **Case #19-cv-01025-PX**

Dear Mr. Honick:

    We have received your letter dated October 17, 2022 and purporting to identify deficiencies in our supplemental document productions of October 7, 2022 and October 14, 2022. Please accept this letter as a good faith attempt to resolve an ongoing discovery dispute.

    **1.** ███████████████

███████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

████████████████████████████████████████████

████████████

### 2. **Request No. 20:**

In response to your request for specific clarification of certain produced documents, we provide the following additional information:

- The document produced as STATE-J-000297 is "different from the preceding 200+ pages of spreadsheet data, both in its appearance and data," because it comprises a separate tab of the Suicide Notification Database that tracks completed suicides or "Actual Suicides." In unredacted form, the tab-page gathers data from July 30, 2012 to present. All data after December 31, 2016, has been redacted in accordance with the Court's Order and the scope of this litigation. Dr. Bonieskie prepared her tracking for her own research and not as a result of any State program or policy, and therefore the organization of the data collected may not always be uniform.

- The document produced as STATE-J-000302 is Dr. Lynda Bonieskie's aggregate calculation of the four types of events tracked by the Suicide Notification Forms divided by institution. The document was not kept up or updated and she does not remember which year or years the data pertains to. Because it was unclear whether the data encompassed events between 2008 and 2016, we chose to leave the document unredacted.

In response to your request for summary sheets of "total suicide attempts by housing unit" for years prior to the 2016 fiscal year and for "Facility Totals" prior to FY 2015, there are no such additional summaries in the database. Again, Dr. Bonieskie compiled the data for her own research and use, and she updated and expanded the data she collected as she continued to develop the database, meaning that earlier years may not (and often do not) collect the same information. The same considerations explain why STATE-J-000300-000301 does not contain suicide attempt data prior to July 19, 2013. Dr. Bonieskie compiled suicide attempts on this tab beginning from that date; there simply is no supplemental data to produce.

In response to your contention that "data has been omitted" from STATE-J-000070-000148, although you are correct that the spreadsheets contain columns headed "Single Cell?," "Housing Type," and "Other Housing," Dr. Bonieskie's spreadsheet for that range does not contain data in those three columns. The data was therefore not "omitted" and thus cannot be supplemented.

In response to your general demand for unfettered access to, and native format copies of, Dr. Bonieskie's Suicide Notification Form Database and Completed Suicide

Database, we cannot comply with your requests. First, we cannot produce either of the databases in native format without producing the entirety of the database, which includes data to present. We did not agree to produce the entirety of the database, nor did the Court order such production. Second, as explained below, the contours of your Request for Production No. 20 and the Court's Order compelling the State Defendants to produce documents in response to it pertain to a different set of information than the broad data you now seek.

The Court's September 7, 2022, Order in this matter (ECF No. 116) ordered the State Defendants to produce "[i]n response to Request for Production No. 20: the entirety of the suicide database dating back to 2008." Please recall that in Request for Production No. 20, you asked for "All Suicide Notification Forms (DPSCS Form OPS 124-420-4) from January 1, 2008 through December 31, 2016." In your Motion to Compel (ECF No. 71), you stated that "Dr. Bonieskie testified that she has access to a "Suicide Database" that contains all of the requested Suicide Notification Forms dating back to 2001" and "could access this electronic database from a computer" such that "the documents could easily be produced in their entirety with little effort." ECF No. 71, p. 11. This memorialized the parties' informal discussions regarding production of the database *in lieu of* the Suicide Notification Forms themselves, but did *not* expand Request for Production No. 20, which is limited to the Suicide Notification Forms and the four pieces of information recorded in each Form (inmate's name, location, date of suicidal indicator, and type of suicidal indicator – ideation, gesture, attempt, or completion). Indeed, in discussing Plaintiffs' request for the "suicide database" relevant to Request for Production No. 20, the Court carefully emphasized that "Plaintiffs . . . seek . . . only the database which tracks the name of the prisoner, the place of their incarceration, the date of incident and the type of self-harm." ECF No. 115, p. 24.

It is therefore clear that the "suicide database" contemplated by the Court in its Order compelling production in response to Request for Production No. 20 contained only the Suicide Notification Form Database. There is a separate tab in the Suicide Notification Form Database that has limited information on completed suicides, but the scope of this information is nowhere near as comprehensive and sensitive as the information tracked in the Completed Suicide Database.

As explained in our October 7, 2022, and October 14, 2022, letters, we also produced the Completed Suicide Database to the extent that it contained material that would have been included in the Suicide Notification Form Database. In other words, for 2008-2012 (the period of time included in the Court's Order as to Request No. 20, but not covered by the Suicide Notification Form Database, which only began in 2012) we produced the columns of the Completed Suicide Database that contained information that would otherwise be available in the Suicide Notification Form Database – name of inmate, institution, and date of suicide. Unlike the Suicide Notification Form Database, there is no field for "type" in the Completed Suicide Database because it contains only completed

suicides. For 2012-2016, i.e. the period of time that the Suicide Notification Form Database contained responsive information, we provided the columns in the Completed Suicide Database that mirrored that data. Consistent with the Court's order directing the State Defendants to produce mortality reviews, quality assurance reviews and corrective action plans "related to every suicide that occurred at ECI between 2012 and 2016," ECF 115 at 28, we also produced in its entirety each row of the Completed Suicide Database that pertained to an inmate suicide at ECI between 2012 and 2016. We redacted all other rows and entries of the Completed Suicide Database, including all material before January 1, 2008 and after December 31, 2016, as irrelevant and non-responsive to Request for Production No. 20 and the Court's order.

The Suicide Notification Forms do not contain information on the "method of [] suicide[]" or "the housing status of the decedents," including the "single cell," "housing type," and "other housing type" columns. It is therefore unnecessary to produce supplemental or wholly unredacted excerpts of the Completed Suicide Database for 2008 to 2012 as you request in page 3 of your October 17 letter. As this data was not sought in your discovery request or ordered to be produced by the Court, it is not responsive. To the extent that you are now requesting the entire Completed Suicide Database, we object to this request. As we have explained previously, *see e.g.,* ECF No. 106, this information involves private and protected information concerning the mental health of other inmates and individuals, at other correctional facilities, who are not parties, and which is irrelevant and not proportional to the operative factual allegations in the Amended Complaint.

Thank you for your time and attention to this matter.

Very truly yours,

Merrilyn E. Ratliff

Enclosures
cc:     Jason Engel (jengel@kiernantrebach.com)
        David Daneman (ddaneman@wtplaw.com)

**Subject:** (none)

**Date:**   Friday, October 28, 2022 at 5:15:37 PM Eastern Daylight Time

**From:**   Allen Honick

**To:**     Merrilyn Ratliff (merrilyn.ratliff@maryland.gov)

**CC:**     Jason Engel, Michael O. Doyle, Daneman, David

Merrilyn,

We are in receipt of and thank you for your letter dated October 27, 2022, in which you respond to the discovery deficiencies that we noted with respect to your most recent supplement production (STATE-J-00001–317).

First, we will accept your representation that the documents you produced at STATE-J-000070-41 are all the documents associated with Mr. Schirling's suicide death in 2012, despite the psychological review being omitted from that production.

Regarding our Document Request No. 20, the following issues remain in dispute:

> We have requested the Suicide Attempt Database and the Completed Suicide Database in their native format (Excel) from 2008 to 2016, pursuant to the Court's Order (ECF 116). The paper copies that you created from these Databases have inconsistent pagination, appear to have varying data inputs, and may be missing columns. These inconsistencies likely occurred when you/Dr. Bonieskie copied the Databases from their native Excel format to the format that you produced, but they hinder our ability to review and evaluate the underlying data.

> You have refused to produce the Databases in their native format because doing so would produce information pre-2008 and post-2016. However, we believe that Dr. Bonieskie can easily remove the unrelated data from the Databases and produce the remaining data for the relevant years in its native format. Therefore, and as our final good faith attempt to resolve this discovery dispute, we ask you to produce both Databases in their native Excel format.

> You previously advised that Dr. Bonieskie maintains two databases; one that tracks suicide attempts ("ASD"), and another that tracks completed suicides ("CSD"). You advised that the CSD documents completed suicides dating back to 2001, and the ASD documents suicide attempts dating back to 2012. However, you maintain that our Request No. 20 "is limited to the Suicide Notification Forms [i.e. the ASD] and the four pieces of information recorded in each form (inmate's name, location, date of suicidal indicator, and type of suicidal indicator)," but does not include the CSD. Thus, regarding the CSD, you provided us with what you unilaterally deemed the "relevant portions" of the CSD; namely, limited data for the suicides between 2008-2012 (name, institution, and date of death); for the non-ECI suicides between 2012-2016 (same); and four unredacted rows of the CSD for the suicides at ECI between 2012-2016 (which contain thirty columns of data about each suicide). Indeed, you redacted the CSD so heavily that you removed the manner of death for every non-ECI suicide, and for the suicides at ECI between 2008-2012 (which information appears unredacted on the ASD).

> We previously asked you to produce the unredacted CSD for 2008-2016, but you have refused because you claim that such data is "irrelevant and non-responsive to Request for Production No. 20 and the Court's order." You also object because the CSD "involves private and protected information concerning the mental health of other inmates and individuals, at other correctional facilities, who are not parties, and which is irrelevant and not proportional to the operative factual allegations in the

Amended Complaint." Based on these objections, you conclude that it "is therefore unnecessary to produce supplemental or wholly unredacted excerpts of the Completed Suicide Database . . . as this data was not sought in your discovery request or ordered to be produced by the Court."

Regarding your relevancy objection, the Court has already determined that the "data relating to prisoners other than Mr. Robinson, and dating back before his incarceration, is relevant" (ECF 115 at 24). Regarding your private and protected health information objection, you produced the names and DOC numbers of every prisoner in both the ASD and CSD, despite our explicit agreement to you redacting that information and simply providing the underlying data without personal identifiers, so you have obviated that objection. Finally, to the extent that you are refusing to produce the CSD because it is beyond the scope of our Request No. 20, we believe your objection to be frivolous and a distinction without a difference. Our motion to compel sought the suicide data that Dr. Bonieskie referenced during her deposition "dating back to 2001." By your admission, the 2001 database is the CSD (you state that the ASD only began in 2012). We plainly requested the data in the CSD, albeit based on our limited understanding of the documents/databases/data that have been in the State's exclusive control. Thus, there is no legal justification for your continued withholding of the CSD from 2008-2012.

Accordingly, and as our final good faith attempt to resolve this discovery dispute, we ask you to produce the unredacted CSD from 2008-2012.

Finally, regarding your earlier email seeking our settlement demand, as we have made clear since the motions hearing in August, we cannot evaluate this matter for settlement until we receive the supplemental discovery from the State and MHM. To date, MHM has produced nothing to us, despite the Court's September 7th Order compelling same, and the State continues to withhold relevant information as outlined above. Thus, we are presently unable to evaluate the case for settlement or secure settlement authority from our clients, which is what we will advise the Court in the status report on November 1. It is my hope that we can resolve this dispute among ourselves, but we are prepared to seek the Court's intervention early next week if necessary.

Let me know if you have any questions. Otherwise, have a nice weekend.

Best,
Allen

Allen E. Honick
FURMAN | HONICK LAW
11155 Red Run Blvd., Ste. 110
Owings Mills, Maryland 21117
Office: 410-844-6000
Direct: 410-999-8758
Fax: 410-705-5651